OPINION
{¶ 1} Defendant Albert D. Tanner appeals a judgment of the Court of Common Pleas of Muskingum County, Ohio, convicting and sentencing him for two counts of receiving stolen property in violation of R.C. 2913.02 and R.C. 2913.51, and two counts of failure to comply with the order or signal of a police officer, in violation of R.C. 2921.331, after a jury found him guilty of these charges. The jury returned acquittals on one count of breaking and entering in violation of R.C. 2911.13, and two counts of theft in violation of R.C. 2913.02. Appellant assigns five errors to the trial court:
 {¶ 2} "The trial court erred in sentencing the appellant on violations of 2921.331 to a maximum sentence and ignored the sentencing factors in said statute.
 {¶ 3} "The trial court erred in a finding of guilty to count four in that the operation of said vehicle did not cause a substantial risk of serious physical harm to persons or property, and such finding by the jury is against the manifest weight of the evidence.
 {¶ 4} "The trial court erred in allowing the character type evidence that was irrelevant, overly prejudicial, and only portrayed the appellant in a bad light in contravention of the rule of evidence 404.
 {¶ 5} "The trial court erred in allowing certain police testimony and records to come into evidence as `Business Records' contrary to evidence rule 803(8).
 {¶ 6} "The state of ohio violated the appellant's privilege against self-incrimination by commenting upon his failure to testify thus preventing the appellant from having a fair trial."
 {¶ 7} At trial, the State presented evidence on September 16, 2002, someone stole a white Pontiac Grand Prix from the Route 22 Auto Lot after breaking through a window. Three witnesses testified they had seen the appellant driving this vehicle on the same evening. Several employees of AK Steel also observed a person matching the general description of appellant driving the white Grand Prix. The person they observed appeared to be going through vehicles in the parking lot, taking things from the employees' cars. After AK Steel's security called police, the individual fled, pursued by Officers Suici and Groves. The officers determined from the license plate of the vehicle that it was the vehicle stolen from Route 22 Auto Sales. The officers testified the driver of the vehicle ran stop signs and was traveling very fast. Because there were other vehicles on the road, the officers pursued the vehicle only for about a minute.
 {¶ 8} Thereafter, the driver abandoned the vehicle and took off running. Various officers participated in the chase, and described the runner as a white male, approximately 5'10", medium build, wearing a black or navy tee shirt. Witnesses observed appellant running away from Officer Keck, who also later identified the runner as the appellant. Officers found a black tee shirt lying in the intersection of Forest and Euclid Avenue, which Officer Keck identified as being similar to the one appellant was wearing. A forensic specialist testified certain bodily secretions on the tee shirt matched the appellant's DNA.
 I {¶ 9} The trial court found counts four and five merged, and counts three and seven merged. The trial court sentenced appellant on count three, a fourth degree felony, to one year in prison, and on count five, a felony, to three to five years in prison. The court ordered the sentences to be served consecutively. In his first assignment of error, appellant argues the trial court ignored the statutory sentencing factors.
2929.12 FACTORS TO CONSIDER IN FELONY SENTENCING
 {¶ 10} "Unless otherwise required by section 2929.13 or 2929.14 of the Revised Code, a court that imposes a sentence under this chapter upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code. In exercising that discretion, the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct and the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offender's recidivism and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing.
 {¶ 11} "(B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:
 {¶ 12} "The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
 {¶ 13} "(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
 {¶ 14} "(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.
 {¶ 15} "(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.
 {¶ 16} "(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.
 {¶ 17} "(6) The offender's relationship with the victim facilitated the offense.
 {¶ 18} "(7) The offender committed the offense for hire or as a part of an organized criminal activity.
 {¶ 19} "(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.
 {¶ 20} "(9) If the offense is a violation of section 2919.25 or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children.
 {¶ 21} "(C) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is less serious than conduct normally constituting the offense:
 {¶ 22} "The victim induced or facilitated the offense.
 {¶ 23} "(2) In committing the offense, the offender acted under strong provocation.
 {¶ 24} "(3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.
 {¶ 25} "(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.
 {¶ 26} "(D) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes:
 {¶ 27} "At the time of committing the offense, the offender was under release from confinement before trial or sentencing, under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or under post-release control pursuant to section 2967.28
or any other provision of the Revised Code for an earlier offense or had been unfavorably terminated from post-release control for a prior offense pursuant to division (B) of section 2967.16 or section 2929.141 of the Revised Code.
 {¶ 28} "(2) The offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has a history of criminal convictions.
 {¶ 29} "(3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code prior to January 1, 2002, or pursuant to Chapter 2152. of the Revised Code, or the offender has not responded favorably to sanctions previously imposed for criminal convictions.
 {¶ 30} "(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.
 {¶ 31} "(5) The offender shows no genuine remorse for the offense.
 {¶ 32} "(E) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes:
 {¶ 33} "Prior to committing the offense, the offender had not been adjudicated a delinquent child.
 {¶ 34} "(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.
 {¶ 35} "(3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.
 {¶ 36} "(4) The offense was committed under circumstances not likely to recur.
 {¶ 37} "(5) The offender shows genuine remorse for the offense."
 {¶ 38} In State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165,793 N.E.2d 473, the Ohio Supreme Court held the trial court is required to make the statutory findings to support consecutive sentences, and give reasons for those findings at the sentencing hearing, Comer, supra,
syllabus by the court, paragraph one.
 {¶ 39} At the sentencing hearing, the trial court heard testimony from the probation officer who conducted the pre-sentence investigation. Defense counsel was permitted to cross-examine the probation officer, and bring certain mitigating factors to the court's attention.
 {¶ 40} The trial court addressed appellant, and made reference to the pre-sentence investigation report, and the testimony of the probation officer who prepared the report. The court found numerous factors present in the case, such as appellant's prior criminal history, the fact he was on post-release control at the time of committing the offense, and the offense carried the possibility of harm. The court noted appellant's lack of remorse and failure to acknowledge his responsibility in the case, and concluded appellant has a propensity to commit future crimes.
 {¶ 41} The trial court found a prison sentence appropriate, and the minimum sentence would demean the seriousness of the offense and not adequately protect society. The court found the appellant committed one of the worse forms of the offense, of failure to comply with an order of an officer.
 {¶ 42} The court noted the chase only lasted 40 to 50 seconds, but found it was only because Lieutenant Suici stopped the chase. The court found the maximum sentence would be appropriate.
 {¶ 43} R.C. 2921.331 lists ten factors a court should consider in determining the seriousness of the offender's conduct in failure to comply with the order or signal of a police officer. Those factors are the duration of the pursuit, the distance of the pursuit, the rate of speed, failure to stop for any traffic lights or stop signs, the number of traffic lights or stop signs violated, whether the offender operated the motor vehicle without lighted lights during a time when lighted lights are required, whether the offender committed a moving violation during the pursuit, the number of moving violations the offender committed during the pursuit, and any other relevant factor.
 {¶ 44} We find the record demonstrates the trial court considered these factors, discussing some of them, and noting the probation officer testified to others.
 {¶ 45} We find the trial court complied with the provisions ofState v. Comer, supra, and made the necessary findings to support the maximum sentence.
 {¶ 46} The first assignment of error is overruled.
 II {¶ 47} In his second assignment of error, appellant argues the jury's verdict as to count four, the failure to comply with the order or signal of a police officer, was against the manifest weight of the evidence. This count is a felony of the third degree, and requires the element of substantial risk of serious physical harm to persons or property. Appellant argues because the chase was only for a short amount of time and an extremely short distance, the State had failed to prove there was a substantial risk of serious physical harm to persons or property.
 {¶ 47} In considering a claim a conviction is against the manifest weight of the evidence, we must review the entire record, including the evidence and all reasonable inferences, and the credibility of witnesses, to determine whether the jury lost its way and created a manifest miscarriage of justice with its verdict, State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. Issues regarding the weight of the evidence and credibility of the witnesses are for the trier of fact to determine, see State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212.
 {¶ 48} R.C. 2901.01 defines "substantial risk" as a strong possibility, as contrasted with the remote or significant possibility that a certain result may occur or that certain circumstances may exist. "Serious physical harm to persons" is defined as physical harm that carries a substantial risk of death, permanent incapacity or substantial temporary incapacity, see R.C. 2901.01. Likewise, "serious physical harm to property" includes substantial devaluation in property, substantial interference with the enjoyment of property, or repairs requiring a substantial amount of time, effort, or money, see R.C. 2901.01 (A)(6).
 {¶ 49} Fortunately, no persons were injured during this incident. There was no property damage. However, as the trial court noted at the sentencing hearing, the reason the chase lasted less than a minute, and for so short a distance, was because the officers abandoned the chase because of the way appellant was operating his vehicle. Officer Suici testified the driver ran stop signs, and some vehicles were coming in the opposite direction during the chase. The officer also testified the vehicle was going fast enough that when it hit the crown of the road it went airborne.
 {¶ 50} We find the determination appellant had violated R.C.2921.331(C)(5)(a) is supported by the manifest weight of the evidence, and as such, the trial court did not err in entering a finding of guilty on the jury's verdict.
 {¶ 51} The second assignment of error is overruled.
 III {¶ 52} In his third assignment of error, appellant argues the trial court erroneously admitted character evidence in violation of Evid. R. 404. Appellant claims the evidence was irrelevant, overly prejudicial, and portrayed appellant in a bad light.
 {¶ 53} Evid. R. 404(B) provides evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show he acted in conformity therewith, but it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 {¶ 54} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court, see State v. Sage (1987),31 Ohio St.3d 173, 510 N.E.2d 343. The Supreme Court has repeatedly defined the term abuse of discretion as implying the court's attitude is unreasonable, arbitrary, or unconscionable, State v. Adams (1980),62 Ohio St.2d 151, 404 N.E.2d 144. Furthermore, defense counsel failed to object, to most of the evidence and for this reason we must review this evidence under a plain error analysis pursuant to Crim. R. 52 (B). Pursuant to the Rule, plain errors or defects affecting the substantial rights of the accused may be noticed even if they were not brought to the attention of the court.
 {¶ 55} Appellant argues the witness, Mary Corder, was permitted to testify about an incident where appellant had struck Corder's daughter's vehicle while it was parked at her house and then fled the scene.
 {¶ 56} The second witness, Charles Corder, testified appellant did not have a driver's license.
 {¶ 57} The State also called Tammy Lewis. Lewis testified appellant had once resided at the Salvation Army. In response to the prosecutor's question regarding why she had called the police, Ms. Lewis began to testify appellant had hit her sister. The prosecutor stopped Ms. Lewis.
 {¶ 58} The purpose of the State's examination of these three witnesses appears to be to establish the witnesses knew appellant and were not mistaken in identifying him. The witnesses also testified appellant had driven a different vehicle from the white Grand Prix.
 {¶ 59} As stated supra, these incidents were not objected to, with the exception of Mrs. Corder's testimony that appellant did not stop after striking her daughter's vehicle. Some of this testimony reveals a history between the witnesses and appellant, and could have inured to his benefit if the jury believed the witnesses were biased against him.
 {¶ 60} We find the trial court did not abuse its discretion in permitting the State to present this evidence.
 {¶ 61} The third assignment of error is overruled.
 IV {¶ 62} In his fourth assignment of error, appellant argues the trial court improperly allowed certain police testimony and records to come into evidence as "business records." Evid. R. 803 provides records in criminal cases regarding matters observed by police officers and other law enforcement personnel are not admissible unless offered by the defendant.
 {¶ 63} We find the admission of this evidence was error.
 {¶ 64} The State urges us to find this evidence is harmless beyond a reasonable doubt. In determining whether an error is harmless, we must examine the entire record to determine whether there was substantial evidence supporting the conviction, minus the disputed evidence, see, e.g., State v. Davis (1975), 44 Ohio App.2d 335, 338 N.E.2d 793.
 {¶ 65} We have reviewed the record, and we find, disregarding the disputed evidence, there was still overwhelming evidence presented from which the jury could determine appellant was guilty.
 {¶ 66} The fourth assignment of error is overruled.
 V {¶ 67} In his fifth assignment of error, appellant argues the prosecutor impermissibly commented upon appellant's failure to take the stand and testify in his own defense.
 {¶ 68} Under the Fifth Amendment to the United States Constitution, applicable to Ohio by reason of the Fourteenth Amendment, the prosecution is forbidden from commenting on the silence of the accused, see Griffin v. California (1965), 38 U.S. 609.
 {¶ 69} The first statement appellant points us to is the prosecutor's closing argument there had been no evidence which refutes the State's evidence. A reference by the prosecutor in closing argument to uncontradicted evidence is not improper if the comment is directed to the strength of the State's evidence, and not to the silence of the accused,State v. Williams (1986), 23 Ohio St.3d 16, 490 N.E.2d 906. The prosecution may comment on the failure of the defense to offer evidence in support of its case, Lockett v. Ohio (1978), 438 U.S. 586.
 {¶ 70} The second statement by the prosecutor was "Did Tanner offer an explanation?" "Did Tanner identify himself?"
 {¶ 71} We have reviewed the entire portion of the closing argument. In it, the prosecutor discussed appellant's behavior with Sergeant Keck on the night of the incident. The prosecutor noted the officer testified he saw and spoke to appellant that night, but appellant did not identify himself or explain to the officer what he was doing, but rather took off running.
 {¶ 72} We find the prosecutor's statement refers to appellant's behavior on the night in question, and not to his failure to testify at trial.
 {¶ 73} We find the trial court did not err by permitting the State of Ohio to make this closing argument. The fifth assignment of error is overruled.
 {¶ 74} For the foregoing reasons, the judgment of the Court of Common Pleas of Muskingum County, Ohio, is affirmed, and the cause is remanded to that court for execution of sentence.
Gwin, P.J., Farmer, J., and Edwards, J., concur.