[Cite as *State v. Wingate*, 2020-Ohio-6796.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

STATE OF OHIO,

  PLAINTIFF-APPELLEE,      CASE NO. 6-20-07

  v.

BRIAN DOUGLAS WINGATE,

                 **O P I N I O N**

  DEFENDANT-APPELLANT.


Appeal from Hardin County Common Pleas Court
Trial Court No. CRI 20192140

**Judgment Affirmed**

Date of Decision: December 21, 2020


APPEARANCES:

  *Michael B. Kelley* for Appellant

  *Jason M. Miller* for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Brian D. Wingate ("Wingate"), appeals the March 9, 2020 judgment of sentence of the Hardin County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case arises from a September 30, 2019 incident in which a law enforcement officer observed Wingate operating a motorcycle without a license plate in Kenton. When the law enforcement officer initiated a traffic stop, Wingate initially complied by pulling over on the side of the road. However, shortly thereafter, Wingate fled the scene, initiating a pursuit of his motorcycle. During the pursuit, which lasted over 14 miles, Wingate committed several additional traffic violations, including traveling in excess of 100 miles per hour and forcing several vehicles off the road. The pursuit ended when Wingate crashed his vehicle into a corn field.

{¶3} On October 16, 2019, the Hardin County Grand Jury indicted Wingate on one count of failure to comply with the order or signal of a police officer in violation of R.C. 2921.331(B), (C)(5)(a)(ii), a third-degree felony. (Doc. No. 2). On November 6, 2019, Wingate appeared for arraignment and entered a plea of not guilty to the count in the indictment. (Doc. No. 10).

{¶4} A change of plea hearing was held on January 14, 2020. (Doc. No. 16). Pursuant to a negotiated plea agreement, Wingate withdrew his previous plea of not

guilty and pleaded guilty to the count in the indictment. (Doc. Nos. 16, 17). In exchange, the State agreed to recommend five years of community control. (*See* Doc. No. 16). The trial court accepted Wingate's guilty plea, found him guilty, and ordered a presentence investigation. (Doc. No. 17). The following day, the trial court filed its judgment entry of conviction. (*Id.*)

{¶5} On February 12, 2020, Wingate appeared for a sentencing hearing. (Doc. No. 23). At the hearing, the parties jointly recommended that the trial court sentence Wingate to five years of community control. (*Id.*); (Feb. 12, 2020 Tr. at 7-9). However, the trial court rejected the parties' jointly-recommended sentence and sentenced Wingate to 18 months in prison. (Doc. No. 23). On March 5, 2020, Wingate appeared for re-sentencing for the limited purpose of implementing a four-year mandatory driver's license suspension. (*Id.*). On March 9, 2020, the trial court filed its judgment entry of sentence. (*Id.*).

{¶6} On March 17, 2020, Wingate filed his notice of appeal. (Doc. No. 26). He raises one assignment of error for our review.

### Assignment of Error

**The trial court abused its discretion in sentencing Appellant to a prison term which was not supported by the record when it relied upon and considered facts that were not relevant, or not proven, or not accurate.**

{¶7} In his assignment of error, Wingate argues that the trial court erred by sentencing him to 18 months in prison. Specifically, Wingate contends that the

record does not support the imposition of a prison sentence. Wingate also alleges that the trial court's sentence was based on an inaccurate record and irrelevant information.

**{¶8}** Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶9}** "'Trial courts have full discretion to impose any sentence within the statutory range.'" *State v. Smith*, 3d Dist. Seneca No. 13-15-17, 2015-Ohio-4225, ¶ 9, quoting *State v. Noble*, 3d Dist. Logan No. 8-14-06, 2014-Ohio-5485, ¶ 9, citing *State v. Saldana*, 3d Dist. Putnam No. 12-12-09, 2013-Ohio-1122, ¶ 20. As a low-tier third-degree felony, failure to comply with the order or signal of a police officer with a finding that the offender caused a substantial risk of serious physical harm to persons or property carries a sanction of 9 to 36 months' imprisonment. R.C. 2921.331(B), (C)(5)(a)(ii); R.C. 2929.14(A)(3)(b).

{¶10} Here, Wingate was sentenced to 18 months' imprisonment. Accordingly, the trial court's sentence is within the statutory range. "'[A] sentence imposed within the statutory range is "presumptively valid" if the [trial] court considered applicable sentencing factors.'" *State v. Nienberg*, 3d Dist. Putnam Nos. 12-16-15 and 12-16-16, 2017-Ohio-2920, ¶ 10, quoting *State v. Maggette*, 3d Dist. Seneca No. 13-16-06, 2016-Ohio-5554, ¶ 31, quoting *State v. Collier*, 8th Dist. Cuyahoga No. 95572, 2011-Ohio-2791, ¶ 15.

{¶11} R.C. 2929.11 provides, in pertinent part, that the "overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state and local government resources." R.C. 2929.11(A). To achieve the overriding purposes of felony sentencing, R.C. 2929.11 directs courts to "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* In addition, R.C. 2929.11(B) instructs that a sentence imposed for a felony "shall be reasonably calculated to achieve the three overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences

imposed for similar crimes committed by similar offenders." "In accordance with these principles, the trial court must consider the factors set forth in R.C. 2929.12(B)-(E) relating to the seriousness of the offender's conduct and the likelihood of the offender's recidivism." *Smith* at ¶ 10, citing R.C. 2929.12(A). "'A sentencing court has broad discretion to determine the relative weight to assign the sentencing factors in R.C. 2929.12.'" *Id.* at ¶ 15, quoting *State v. Brimacombe*, 195 Ohio App.3d 524, 2011-Ohio-5032, ¶ 18 (6th Dist.), citing *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000).

{¶12} Further, R.C. 2921.331(C)(5)(b) outlines several factors that the sentencing court must consider prior to determining the sentence for a violation of R.C. 2921.331(B) when the offender caused a substantial risk of serious physical harm to persons or property. *State v. Jordan*, 3d Dist. Hardin No. 6-11-05, 2011-Ohio-6015, ¶ 15. These factors include:

(i)     The duration of the pursuit;

(ii)    The distance of the pursuit;

(iii)   The rate of speed at which the offender operated the motor vehicle during the pursuit;

(iv)    Whether the offender failed to stop for traffic lights or stop signs during the pursuit;

(v) The number of traffic lights or stop signs for which the offender failed to stop during the pursuit;

(vi) Whether the offender operated the motor vehicle during the pursuit without lighted lights during a time when lighted lights are required;

(vii) Whether the offender committed a moving violation during the pursuit;

(viii) The number of moving violations the offender committed during the pursuit;

(ix) Any other relevant factors indicting that the offender's conduct is more serious than conduct normally constituting the offense.

R.C. 2921.331(C)(5)(b). However, the trial court is not required to make specific findings on the record regarding its consideration of these factors. *Jordan* at ¶ 16, citing *State v. Jones*, 8th Dist. Cuyahoga No. 89499, 2008-Ohio-802, ¶ 18 and *State v. Anderson*, 8th Dist. Cuyahoga No. 83285, 2004-Ohio-2858, ¶ 22.

{¶13} Wingate's chief objection is that the trial court did not impose the jointly recommended sentence of five years of community control. However, "trial courts * * * are not bound by a jointly recommended sentence." *State v. Spencer*, 3d Dist. Hardin Nos. 6-12-15 and 6-12-16, 2013-Ohio-137, ¶ 10, citing *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 28. "'A trial court does not err by

imposing a sentence greater than "that forming the inducement for the defendant to plead guilty when the trial court forewarns the defendant of the applicable penalties, including the possibility of imposing a greater sentence than that recommended by the prosecutor.""" *Id.*, quoting *State ex rel. Duran v. Kelsey*, 106 Ohio St.3d 58, 2005-Ohio-3674, ¶ 6, quoting *State v. Buchanan*, 154 Ohio App.3d 250, 2003-Ohio-4772, ¶ 13 (5th Dist.). However, Wingate has not filed a transcript of the change of plea hearing for our review. Further, Wingate does not allege that he was not warned that the trial court was not required to impose the jointly-recommended sentence. Accordingly, we will assume that the trial court duly notified Wingate that it was not required to impose the jointly-recommended sentence. *See State v. Brofford*, 3d Dist. Union No. 14-12-08, 2013-Ohio-3781, ¶ 53 ("'When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.'"), quoting *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980). Therefore, provided that the trial court properly considered the purposes of felony sentencing set forth in R.C. 2929.11(A), the R.C. 2929.12(B)-(E) felony-sentencing factors, and the 2921.331(C)(5)(b) factors, the trial court's deviation from the jointly-recommended sentence will not support a modification or vacation of Wingate's sentence.

{¶14} From the record, it is clear that the trial court sentenced Wingate after considering the overriding purposes of felony sentencing set forth in R.C. 2929.11(A) and the relevant R.C. 2929.12(B)-(E) and R.C. 2921.331(C)(5)(b) factors. Prior to announcing Wingate's sentence, the trial court discussed the overriding purposes of felony sentencing and specifically stated that its "primary duty is always to protect the public" and that in the trial court's opinion, a term in prison was necessary to protect the public from future crime by Wingate. (Feb. 12, 2020 Tr. at 19-20). *See* R.C. 2929.11(A). Further, the trial court stated that Wingate was "not amenable to any * * * combination" of available community resources. (Feb. 12, 2020 Tr. at 20). *See* R.C. 2929.11(A). The trial court also expressed that the shortest prison term would "demean the seriousness" of Wingate's actions. (Feb. 12, 2020 Tr. at 20). *See* R.C. 2929.11(A). Therefore, the record clearly demonstrates that the trial court considered the purposes of felony sentencing set forth in R.C. 2929.11(A) when sentencing Wingate.

{¶15} The record also supports that the trial court considered the applicable R.C. 2929.12(B)-(E) factors. First, the trial court considered the factors indicating that Wingate's conduct is more serious than conduct normally constituting the offense. *See* R.C. 2929.12(B). The trial court assumed the community was the victim of Wingate's criminal activity and stated that his actions created "a

substantial risk of serious physical harm." (Feb. 12, 2020 Tr. at 18). *See* R.C. 2929.12(B).

{¶16} The trial court also addressed whether Wingate had responded favorably to sanctions previously imposed for criminal convictions. *See* R.C. 2929.12(D)(3). The trial court stated that when Wingate's criminal conduct occurred, he had cases pending in another county. (Feb. 12, 2020 Tr. at 18). *See* R.C. 2929.12(D)(3). The trial court also found that Wingate had "a history of criminal convictions" and has "not responded favorably" to prior sanctions. (Feb. 12, 2020 Tr. at 18). *See* R.C. 2929.12(D)(3).

{¶17} Next, the trial court considered the factors indicating that Wingate is not likely to commit future crimes. *See* R.C. 2929.12(E). The trial court found that Wingate had no juvenile delinquency adjudications. (Feb. 12, 2020 Tr. at 19). *See* R.C. 2929.12(E)(1). However, the trial court found that none of the other R.C. 2929.12(E) factors applied to Wingate. (Feb. 12, 2020 Tr. at 19). *See* R.C. 2929.12(E).

{¶18} Nevertheless, Wingate argues that the trial court abused its discretion by relying on "inaccurate" documents. Specifically, Wingate argues that the documents the trial court relied on in fashioning his sentence, particularly the PSI, were inaccurate and incomplete. In support of his contention that the trial court abused its discretion by relying on inaccurate information, Wingate relies on the

trial court's statement that he was charged with approximately 15 crimes in 5 years. (Feb. 12, 2020 Tr. at 12). Wingate argues that several of the charges were subsequently dropped, some during the pendency of the current case. Thus, Wingate contends that he was only convicted of 11 crimes in 5 years. Accordingly, Wingate argues that the trial court relied on incorrect information and, therefore, abused its discretion.

{¶19} First, at the beginning of the sentencing hearing, Wingate's trial counsel and the State both expressed that they did not have any objections to the information contained in the PSI. (Feb. 12, 2020 Tr. at 3-4). Next, we note that the trial court stated that Wingate was *charged* with approximately 15 crimes in 5 years. (*Id.* at 12, 17). Thus, even if we assume that Wingate's statement that several of the charges were later dismissed is true, Wingate does not contest that he was *charged* with the crimes referenced by the trial court even if he was not ultimately *convicted* of them. Additionally, whether Wingate had 15 or 11 misdemeanor convictions in the previous 5 years, Wingate admitted to the trial court that he had an "extensive misdemeanor record." (*Id.* at 15). Further, to the extent that the trial court's documents relating to his criminal history were incomplete, Wingate acknowledges that he "corrected" the perceived inaccuracies at the sentencing hearing. (Appellant's Brief at 11-12). (*See* Feb. 12, 2020 Tr. at 13-14, 25). Accordingly, we

cannot find that the trial court abused its discretion by relying on inaccurate documents when fashioning his sentence.

{¶20} Wingate also alleges that the trial court abused its discretion by relying on irrelevant information when determining his sentence. Specifically, Wingate contends that the trial court's reference to his $13,000 child support arrearage indicates that the trial court considered "irrelevant" information when fashioning his sentence because his child support obligation was not pertinent to the present case. However, the PSI indicates that a warrant for Wingate's arrest was filed in October 2019 for nonsupport. (PSI at 8). Accordingly, Wingate's failure to make child support payments was relevant to his prior criminal history. *See* R.C. 2929.12(D)(3). Further, at the sentencing hearing, the trial court stated that because Wingate owes $13,000 in child support, the trial court was "not going to exacerbate that problem" by imposing a fine. (Feb. 12, 2020 Tr. at 20). Thus, the record indicates that Wingate actually benefitted from the trial court's reference to his child support obligation.

{¶21} Finally, the record supports that the trial court also considered the R.C. 2921.331(C)(5)(b) factors. The trial court stated that Wingate did not have a license plate on his vehicle, ran several stop signs during the pursuit, drove through a private yard, drove in excess of 100 miles an hour, forced other vehicles off the road, passed vehicles on the right side, ran a red light, and crashed his motorcycle into a field.

(Feb. 12, 2020 Tr. at 5). Further, when the pursuit ended, Wingate admitted that he saw the law enforcement officer and had traveled over 14 miles before he drove his motorcycle into a field, thereby ending the pursuit. (*Id.*). Moreover, Wingate disclosed that "when he gets on a motorcycle, he doesn't care about anything." (*Id.*). The trial court stated that it considered all of the R.C. 2921.331(C)(5)(b) factors and found all of the factors except one to be adverse to Wingate. (Feb. 12, 2020 Tr. at 17-18). *See* R.C. 2921.331(C)(5)(b). With respect to R.C. 2921.331(C)(5)(b)(vi), which requires the trial court to consider "[w]hether the offender operated the motor vehicle during the pursuit without lighted lights during a time when lighted lights are required," the trial court stated that it did not know what time of day the incident occurred and whether Wingate was driving with lights on, if they were required. (Feb. 12, 2020 Tr. at 17). *See* R.C. 2921.331(C)(5)(b)(vi).

{¶22} Wingate argues that because the trial court did not have specific information regarding the time of day of the incident, the trial court abused its discretion by sentencing him without having "actual evidence or facts" to support all of the R.C. 2921.331(C)(5)(b) sentencing factors. (Appellant's Brief at 14). We disagree.

{¶23} "The [trial] court is not required by statute or otherwise to state its consideration of [the R.C. 2921.331(C)(5)(b)] statutory factors on the record nor make any specific finding in relation thereto." *State v. Anderson*, 8th Dist.

Cuyahoga No. 83285, 2004-Ohio-2858, ¶ 22. Further, Ohio courts have held that where the trial court found the defendant guilty of the charge of failure to comply with the order or signal of a police officer, "'[t]he court found defendant guilty of the charges based upon the facts presented by the State; therefore, the court necessarily considered those facts which fell within R.C. 2921.331(C)(5)(b)(i)-(ix).'" *Jordan*, 2011-Ohio-6015, at ¶ 18, quoting *Anderson* at ¶ 22 and citing *Jones*, 2008-Ohio-802 at ¶ 1 and *State v. Oliver*, 7th Dist. Mahoning No. 07 MA 169, 2008-Ohio-6371, ¶ 30. Here, although the trial court did not have specific information with respect to the time of day of the incident and whether Wingate's lights were activated during the pursuit, the trial court chose to give Wingate the benefit of the doubt and did not find that R.C. 2921.331(C)(5)(b)(vi) was adverse to Wingate. Thus, Wingate was not prejudiced by the trial court's lack of knowledge of the time of day of the incident. Accordingly, we find that the trial court did consider the factors set forth in R.C. 2921.331(C)(5)(b) and presented its findings in consideration thereof when it imposed its sentence. *See Jordan* at ¶ 18-20 (holding that the trial court considered all of the required statutory factors despite the trial court's failure to specifically reference the factors); *State v. Tanner*, 5th Dist. Muskingum No. CT2003-0025, 2003-Ohio-7274, ¶ 44 (finding that the record demonstrated that the trial court considered the R.C. 2921.331 sentencing factors where it "discuss[ed] some of them" and noted that "the probation officer testified

to others"); *State v. Banks*, 8th Dist. Cuyahoga Nos. 81679 and 81680, 2003-Ohio-1171, ¶ 31-32 (holding that the trial court considered the R.C. 2921.331 factors where it made reference to some, but not all, of the factors at the sentencing hearing).

{¶24} In conclusion, the trial court properly considered the purposes of felony sentencing and applied the relevant R.C. 2929.12 and R.C. 2921.331(C)(5)(b) factors. Furthermore, Wingate's sentence is within the statutory range. Therefore, there is not clear and convincing evidence that Wingate's sentence is unsupported by the record or that his sentence is otherwise contrary to law. *See Nienberg*, 2017-Ohio-2920, at ¶ 23.

{¶25} Wingate's assignment of error is overruled.

{¶26} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**